# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **PATRICIA LILLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 08-CV-00137** |
| **v.** | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **JOHN E. POTTER, Postmaster General,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Patricia Lilly filed suit against John Potter in his capacity as Postmaster General. Lilly

seeks damages for retaliation in violation of the Family Medical Leave Act ("FMLA"), 29

U.S.C. § 2601 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §

2000(e) *et seq.*; interference with Lilly's rights under FMLA; and discrimination in violation of

the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 791 *et seq*. Before the court

is Potter's motion for summary judgment. For the reasons set forth below, the court grants

Potter's motion [#49] with respect to Lilly's retaliation and discrimination claims and denies it

with respect to Lilly's interference claim.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and

assess the proof as presented in depositions, answers to interrogatories, admissions, and

affidavits that are part of the record. *Id.* While the court must construe all facts in a light most

favorable to the non-moving party and draw all reasonable inferences in that party's favor,

*Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986),

where a claim or defense is factually unsupported, it should be disposed of on summary

judgment. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265

(1986). The party seeking summary judgment bears the initial burden of proving there is no

genuine issue of material fact. *Id.* at 323. In response, the non-moving party cannot rest on bare

pleadings alone but must use the evidentiary tools listed above to designate specific material

facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*,

216 F.3d 596, 598 (7th Cir. 2000).

## BACKGROUND[1]

Lilly was a part-time flexible letter carrier ("PTF") for the U.S. Postal Service ("Postal

Service"). She worked at the Graceland Carrier Annex in Chicago ("Graceland"), which

operates more than seventy postal routes. PTFs act as back-up letter carriers, and they can be

assigned to assist in any aspect of letter carriers' duties. Potential assignments for PTFs include

(1) taking mail from a truck and distributing it to mail routes, (2) preparing mail for delivery, (3)

delivering mail on routes, and (4) doing collections. Additionally, Graceland management

sometimes assigned PTFs to help at nearby postal stations when needed. PTFs are also able to

submit bids for available routes. The bidder with the highest seniority wins, and the supervisors

must honor the winning bids.

---

[1] The facts set forth in this section are derived from the statements of fact submitted by the parties to the
extent they comport with Local Rule 56.1. They are taken in the light most favorable to the non-movant.
*Anderson*, 477 U.S. at 255.

Lilly reported to three managers at Graceland – Bernadette Davis, Jackie Cole, and Anthony Bradley. Davis and Cole were customer service supervisors, and Bradley was the station manager. Leave status for Postal Service employees, including PTFs, is maintained on an electronic database, Enterprise Resource Management System ("ERMS"). All Postal Service managers have access to ERMS, and it is part of their normal duties to check ERMS daily.

## I. Lilly's December 2006 Injury

On December 1, 2006, Lilly fell while delivering mail and injured her back. Her MRI showed a herniated cervical disc, at the base of her neck. As a result, Lilly was either absent from work or limited in the work she could perform from December 2006 to January 2, 2007. Lilly filed an FMLA claim for these absences and limitations, and the Postal Service granted it in February 2007. ERMS reflected that some of Lilly's leave in December 2006 was FMLA protected.

To treat her injury, Lilly saw an orthopedist, Dr. Charles Mercier. Dr. Mercier cleared Lilly to return to work on January 2, 2007, but he prescribed continuing physical therapy sessions until Lilly fully recovered. Following doctor's orders, Lilly scheduled several physical therapy sessions in January and February 2007. When Lilly approached Cole about attending these appointments, Cole said she believed that Lilly's prescription for physical therapy was forged and that Lilly's injuries were not real. Nevertheless, Lilly attended all of her physical therapy appointments except for the last two scheduled in February. Lilly was also able to attend four unrelated medical appointments with her primary physician between January and June 2007.

During this same time, Cole issued Lilly six written disciplinary notices. On January 8, Cole issued Lilly a letter of warning for failure to follow instructions. Bradley concluded the

3

letter of warning was procedurally defective and reduced it to an official job discussion. On April 30, Cole issued Lilly a letter of warning for being inexcusably absent on April 14. Bradley rescinded this letter because Lilly had not been scheduled to work that day. On May 3, Cole issued Lilly a seven-day suspension for insubordination, which Bradley decreased to a letter of warning. On May 14, Cole reissued the same suspension, which Bradley again decreased. On May 21, Cole issued Lilly a seven-day suspension for failure to follow instructions and unauthorized overtime. Bradley rescinded this suspension because it did not identify the date of the infraction or the route assigned. Finally, on May 28, Cole issued Lilly a letter of warning for failure to follow instructions. Once again, Bradley rescinded the discipline as procedurally defective. Shortly thereafter, on June 6, Lilly filed an EEO pre-complaint counseling form complaining about the discipline she received and route assignments she viewed as too difficult.

Because she was still in pain, Lilly bid on and requested routes with fewer stairs and residences and lower mail volume. On one occasion sometime after January 2007, Lilly told Davis that she was supposed to be accommodated because of her injury and that she was having difficulty completing Route 65, to which Cole had assigned her. During the week of April 9, 2007, Lilly successfully bid on Route 33, a route Lilly viewed as easy. Despite the Postal Service's policy of honoring these bids, Cole refused to assign Lilly to Route 33. Cole again refused to honor Lilly's bid for Route 33 on April 19 and refused to honor another bid on April 30. On another occasion, after Lilly informed Cole of an appointment with the Postal Service's employee assistance hotline, Cole assigned Lilly to Route 45, a difficult route for Lilly. Cole could have assigned Lilly to Route 33, which would have enabled Lilly to attend her appointment, but Cole assigned another PTF, Walter Miles, to the route instead. Lilly missed

her appointment because she could not finish the more difficult route on time.  In June, Cole took

Lilly off Route 78, which was easy for Lilly, and reassigned her to a route more difficult for her.

Cole assigned Miles to the now-available Route 78.  Furthermore, during this time, Cole

assigned Lilly to routes with heavy volumes of mail that had been allowed to accumulate by the

previous carrier.  On at least one occasion, when Lilly used overtime to complete these routes,

Cole disciplined her for unauthorized overtime.  When Lilly told Cole stairs caused her pain,

Cole responded that she was sick of Lilly and did not like her.

In an incident on February 13, 2007, a coworker threatened Lilly and called her a

"bipolar bitch."  Bradley Dep. 34:1-13, Feb. 19, 2009, attached as Ex. D to Pl.'s Statement of

Additional Facts.  Lilly complained to Bradley and to another supervisor, Ms. Stern.  Lilly wrote

a report of the incident and requested that the Postal Service launch a formal investigation.

Bradley did not investigate further, but Stern spoke with the coworker, who denied the incident.

On June 27, 2007, Lilly sought sick leave to attend a medical appointment.  A PTF's sick

leave request is approved if the PTF supplies her supervisor with proper documentation of the

need for leave, such as a doctor's note.  Even though Lilly supplied proper documentation, Cole

switched Lilly's assigned day off from June 29 to June 27, the day of Lilly's appointment,

instead of granting Lilly's request.  Lilly typically used her day off to rest and recuperate from

her medical problems and work-related tensions.

## II.    Lilly's June 2007 Injury

On June 30, 2007, Bradley assigned Lilly to Doffyn, a nearby Postal Service station, for

an extended detail to last until August 31, 2007.  That same day, Lilly reinjured her back.  She

visited her primary care physician, Dr. Jean Engelkemeir, on July 5.  Engelkemeir issued a note

to the Postal Service, which said, "[Lilly] is experiencing major depressive symptoms related to ongoing job stress. She is also experiencing an exacerbation of herniated cervical disc disease following a change in her postal route. At this time, I am placing her on a two-week medical leave." Ex. I to Pl.'s Statement of Additional Facts.

Lilly filed an FMLA claim to protect her absences during this time. Carnel Wade, the Postal Service's FMLA coordinator, received Lilly's request on July 17. On July 30, Wade asked Lilly to submit additional medical documentation in support of her claim. This documentation was initially due on August 20, but Wade extended the deadline to August 27. Lilly submitted the additional documentation on or around August 27, and Wade approved Lilly's FMLA request for her absences from July 2 to August 11. Unfortunately, Wade had forgotten to update the FMLA database to reflect the new deadline, and ERMS mistakenly showed Lilly's FMLA request was denied. A letter reflecting this denial was sent to Lilly on August 22. Graceland managers were automatically sent an e-mail, notifying them that Lilly's FMLA claim had been denied. On September 12, Wade realized the error in ERMS and corrected it to reflect that Lilly's FMLA had been approved.

Lilly's doctor authorized her to return to work on August 13 but limited her to carrying no more than twenty pounds. On August 10, Lilly called Bradley to ask where she should report for work, and Bradley directed her back to the detail at Doffyn. When Lilly went to work at Doffyn on August 13, the Doffyn manager, Natasha Washington, denied her request to work with restrictions. Washington sent Lilly back to Graceland, where Lilly had suffered her second injury. Instead of returning to Graceland, Lilly sent Bradley two letters complaining about the denial of her restrictions and asking for direction. She also asked that Bradley contact her only

6

in writing. Bradley did not receive these letters until he returned from working in Oklahoma on September 5, 2007.

On August 22, the same day Graceland managers received notification that Lilly's FMLA request had been denied, Cole sent Lilly a five-day notice directing Lilly to submit justification for her absences from July 1, 2007. On August 27, Lilly filed a formal EEO complaint alleging discrimination based on sex and disability and unlawful retaliation. By September 10, ERMS still reflected that Lilly's FMLA request had been denied. As a result, Bradley sent Lilly another five-day notice directing her to submit justification for her absences from July 1.

Between July and November 2007, Lilly's orthopedist, Dr. Mercier, treated her for pain related to her June 2007 injury, a bulging cervical disc. The treatment included physical therapy and spinal injections. Lilly continued to improve after she returned to work sometime after August 2007. By November, Lilly reported to Dr. Mercier that she was feeling better. In that same month, Lilly biked forty-five minutes to a physical therapy appointment. Dr. Mercier concluded that Lilly had recovered, and he authorized her to return to work without restrictions. Lilly worked fulltime for the next nine months.

## ANALYSIS

Before reaching the merits of Potter's motion for summary judgment, the court will address Potter's motion to strike the affidavit of Dr. Michael Haak. The court agrees with Potter that these materials should be stricken because Lilly did not disclose Haak as a potential witness prior to the close of discovery. *See* Fed. R. Civ. P. 37(c)(1). Lilly admits that she did not disclose Haak to Potter, but she argues that this error was harmless because she disclosed documents related to Haak's treatment of her in early November 2009. Even if these documents

were enough to notify Potter that Haak may have relevant knowledge, they too were provided

after the close of discovery on September 29, 2009. In fact, they were provided even after

November 5, 2009, the deadline for completing outstanding noticed depositions. If Lilly

required more time, it was her obligation to seek relief from the court. *Mannoia* v. *Farrow*, 476

F.3d 453, 457 (7th Cir. 2007). Potter was harmed because he could not depose Haak. *Smith* v.

*Hunt*, No. 08C6982, 2010 WL 3842374, at *5 n.2 (N.D. Ill. Sept. 27, 2010). Thus, the court will

grant Potter's motion to strike Haak's affidavit.

The court also agrees with Potter that the second sentence in ¶ 20 of Lilly's Statement of

Additional Material Facts should be stricken because it is based on hearsay. *Buttron* v. *Sheehan*,

No. 00C4451, 2003 WL 21801222, at *4 (N.D. Ill. Aug. 4, 2003) (hearsay evidence is improper

to show a genuine issue of material fact). Accordingly, the court will not rely on Haak's

affidavit or the hearsay evidence in deciding Potter's motion for summary judgment.

## I.     FMLA and Title VII Retaliation

Lilly claims supervisors at the Postal Service retaliated against her for filing her FMLA

requests and for filing her EEO complaint. To establish a prima facie case of retaliation under

the FMLA and Title VII,[2] Lilly may use either the direct or indirect method. *Argyropoulos* v.

*City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008). Under the direct method, Lilly must present

evidence of "(1) a statutorily protected activity; (2) a materially adverse action taken by the

employer; and (3) a causal connection between the two." *Amrhein* v. *Health Care Serv. Corp.*,

546 F.3d 854, 858 (7th Cir. 2008). Under the indirect method, Lilly must prove that she "(1)

engaged in a statutorily protected activity; (2) met her employer's legitimate expectations; (3)

---

[2] Retaliation claims under the FMLA and those under Title VII are evaluated in the same manner. *Caskey* v. *Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008).

suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Id.* at 859. While Lilly proceeds under both methods, the court need not address them separately because Lilly has failed to show that she suffered a materially adverse employment action, a requirement of both.

Title VII's and the FMLA's anti-retaliation provisions cover only "employer actions that would have been materially adverse to a reasonable employee," meaning that "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53, 57, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) ("We speak of *material* adversity because we believe it is important to separate significant from trivial harms."). Examples might include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Lapka* v. *Chertoff*, 517 F.3d 974, 986 (7th Cir. 2008) (citation omitted) (internal quotation marks omitted); *see also O'Neal* v. *City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004) ("While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." (citation omitted) (internal quotation marks omitted)).

Lilly argues that the following actions were materially adverse: (1) Cole assigned Lilly to difficult mail routes, (2) Cole refused to let Lilly work on routes on which Lilly had successfully bid, (3) Cole issued Lilly six disciplinary violations that Bradley rescinded, (4) Bradley improperly deleted a week of her sick leave, (5) Cole told Lilly her medical documentation was

not real, (6) Cole told Lilly she did not like her and wanted to "break her," and (7) Bradley

refused to investigate when a co-employee called Lilly a "bipolar bitch." Before examining each

of these in turn, the court notes that all of these actions took place before Lilly filed her EEO pre-

complaint counseling form in June 2007 and before she filed her EEO complaint in September

2007. Therefore, these actions could not be in retaliation for her EEO activity. *Bowden* v.

*Kirkland & Ellis LLP*, No. 07C975, 2010 WL 3526483, at \*17 (N.D. Ill. Sept. 3, 2010) ("This

harassment predates Bowden's complaint and EEOC charge by months, and so it could not have

been a product of retaliation.").

As for the difficult mail routes and the disregarded bids, reassignments to less desirable

duties can rise to the level of a materially adverse action, *White*, 548 U.S. at 70-71, but the

change must be "more disruptive than a mere inconvenience or an alteration of job

responsibilities." *Nagle* v. *Vill. of Calumet Park*, 554 F.3d 1106, 1120 (7th Cir. 2009) (quoting

*Crady* v. *Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). "Whether a

change in job responsibilities is materially adverse 'all depends on how much of a change, and

how disadvantageous of a change, took place.'" *Stephens* v. *Erickson*, 569 F.3d 779, 791 (7th

Cir. 2009) (quoting *Sitar* v. *Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003)). Here,

however, Lilly has not even shown that her job responsibilities changed. PTFs are required to

fill in for regular carriers when and where they are needed. The routes that Lilly found difficult

have always been a part of her job duties, and she has not alleged that other PTFs were only

assigned "easy" routes. Lilly's idiosyncratic preference for some routes over others is

insufficient to show a materially adverse action. *Compare Anderson* v. *The Foster Group*, 521

F. Supp. 2d 758, 780 (N.D. Ill. 2007) ("That Plaintiff may personally have found the jail

assignment demeaning is not sufficient."), *with Flanagan* v. *Office of Chief Judge of Cir. Ct. of Cook County, Ill.*, No. 06C1462, 2007 WL 2875726, at *10 (N.D. Ill. Sept. 28, 2007) ("[A] reasonable jury might have determined that Flanagan's preference for street duty was not idiosyncratic but universal within the Adult Probation Department."). Furthermore, Lilly has not provided any evidence that Cole disregarded only her winning bids or that they had not been disregarded before her December 2006 injury and accompanying FMLA request. Lilly has not shown that her job duties changed, and thus, these assignments are not materially adverse.

The six disciplinary actions represent a closer question. In general, letters of warning and unserved suspensions are not materially adverse actions, but they can rise to that level in some cases. *Pantoja* v. *Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 849 (7th Cir. 2007). For example, in *Pantoja*, the Seventh Circuit held that a reasonable jury could find procedurally irregular disciplinary warnings to be materially adverse. *Id*. at 849. The warnings in *Pantoja* were placed in the employee's file without notice to him and were not rescinded. *Id*. at 844. On the other hand, the Seventh Circuit found in *Nagle* that a suspension without pay that was never served did not constitute a materially adverse action because the plaintiff never suffered any hardship. 554 F.3d at 1120-21. The plaintiff had filed a grievance against the suspension, and he argued that waiting to see whether the suspension would be upheld rose to material adversity. *Id*. at 1120. The Seventh Circuit disagreed: "Uncertainty as to whether the suspension will be upheld is not equivalent to actually serving the suspension because the plaintiff does not have to endure the same economic harm." *Id*. at 1121. Therefore, an unserved suspension could be materially adverse only where the plaintiff suffers some harm, which, at minimum, is greater than a period of uncertainty.

11

In this case, although Cole's discipline of Lilly was procedurally defective, Bradley

rescinded all of the disciplinary actions shortly after they were issued. Furthermore, Lilly had

notice of all of these actions and their rescission. While there is an issue of fact regarding Cole's

motives behind these actions, *compare* Cole Decl. ¶ 6 *with* Lilly Dep. 160-161, Jan. 28, 2009,

attached as Ex. F to Pl.'s Statement of Additional Facts, it is immaterial because Lilly never

served any of the suspensions and has not shown that she suffered any hardship. She did not

even face a period of uncertainty, nor did she bear the burden of challenging the suspension as

did the plaintiff in *Nagle*. Lilly attempts to avoid this result by pointing to her work-related

depression as a detriment proceeding from Cole's conduct. But Lilly cites no legal authority that

depression alone is a hardship sufficient to make rescinded discipline materially adverse, and the

court has found none.[3] Instead, Lilly relies solely on her doctor's note, which states that she was

"experiencing major depressive symptoms related to ongoing job stress." Ex. I to Pl.'s

Statement of Additional Facts. Even were the court to accept Lilly's argument that her

depression can raise a genuine issue of fact, the note upon which she relies is insufficient to

show that the rescinded and unserved disciplinary actions caused her depression. The note

provides no evidence beyond an unspecific reference to "job stress." Thus the court finds that

Lilly's case is more akin to *Nagle* than *Pantoja*. As such, Lilly has not shown that the

disciplinary actions were materially adverse.

---

[3] An employee's depression, even when caused by an employer's actions, is insufficient to create a
materially adverse action necessary for a Title VII *discrimination* claim. *Gul-E-Rana Mirza* v. *The
Neiman Marcus Group, Inc.*, 649 F. Supp. 2d 837, 858 (N.D. Ill. 2009); *Mangano* v. *Sheahan*, No.
00C3953, 2002 WL 1821738, at *7 (N.D. Ill. Aug. 7, 2002). But the standard for a materially adverse
action in a retaliation claim is distinct from the standard used in assessing a discrimination claim. *See
White*, 548 U.S. at 57.

Similarly, denying sick leave to which an employee is entitled can be a materially adverse action. *Clemmer* v. *Office of Chief Judge of Cir. Ct. of Cook County and State of Ill.*, No. 06C3361, 2008 WL 5100859, at *9 (N.D. Ill. Dec. 2, 2008). Here, Lilly argues that Bradley's improper deletion of a week of her sick leave in December 2006 was a materially adverse action. Lilly admits, however, that Bradley fixed his error and that she was paid for the leave. Lilly Dep. 171-72. Lilly presents no other evidence of similar incidents, nor does she allege that the correction was delayed or that it caused her any other hardship. Therefore, Lilly has not shown that this was materially adverse. *Clemmer*, 2008 WL 5100859, at *9.

The remaining actions that Lilly alleges were materially adverse fall easily into the category of "petty slights," which are not actionable. *White*, 548 U.S. at 68; *Breneisen* v. *Motorola*, 512 F.3d 972, 981 n.4 (7th Cir. 2008). Isolated incidents of name-calling and verbal abuse, even when accompanied by unwanted physical touching, are not materially adverse. *Fields* v. *Shinseki*, 664 F. Supp. 2d 918, 922 (N.D. Ill. 2009). Here, Cole's disparaging comments that Lilly's medical documents were faked and that she did not like her and wanted to break her are insufficient to be materially adverse. *Ergo* v. *Int'l Merch. Servs., Inc.*, 519 F. Supp. 2d 765, 780 (N.D. Ill. 2007) (noting that personality conflicts and snubbing by supervisors are not materially adverse actions); *Norris* v. *Principi*, No. 03C4923, 2006 WL 235591 (N.D. Ill. Aug. 11, 2006) (holding that supervisor's remark that plaintiff was pretending to be disabled was not actionable.). Also, Lilly has presented no evidence that similar mistreatment continued, and she has admitted that Stern questioned the employee. Where another supervisor addressed the incident, Bradley's decision not to investigate further did not amount to sitting on his hands.

13

Moreover, the isolated nature of these spats shows that they cannot be "severe and pervasive," as required for a hostile work environment. *Fields*, 664 F. Supp. 2d at 922.

Additionally, Lilly sought EEO and FMLA protection after these actions were taken. This shows that she was not dissuaded from engaging in the protected activities. *Brown* v. *Potter*, No. 06C6792, 2008 WL 4091005, at *11 (N.D. Ill. Aug. 28, 2008) (holding that plaintiff could not survive summary judgment on a retaliation claim because the "'retaliatory action' was, in fact, not sufficient to deter the plaintiff from exercising his right."); *Bowden*, 2010 WL 3526483, at *15 ("Moreover, Bowden filed her EEOC charge nine days *after* she received the final warning, demonstrating that the warning did not dissuade her from engaging in further statutorily protected activity.").

Because Lilly has failed to show that she suffered a materially adverse action, the court will grant summary judgment to Potter on Lilly's FMLA and Title VII retaliation claims.

## II.     Rehabilitation Act

Next, Lilly claims that Potter violated the Rehabilitation Act by failing to accommodate her disability. The Rehabilitation Act protects a "qualified individual with a disability" from discrimination solely because of her disability in any program receiving federal financial assistance. *Branham* v. *Snow*, 392 F.3d 896, 902 (7th Cir. 2004) (citing 29 U.S.C. § 794(a)). The court looks to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.,* to determine if a violation of the Rehabilitation Act occurs in the employment context.[4] *Peters* v. *City of Mauston*, 311 F.3d 835, 842 (citing 29 U.S.C. § 794(d)). To establish a *prima*

---

[4] The ADA was significantly amended, effective January 1, 2009. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). As Congress did not express its intent that these amendments be retroactive, the law in place prior to these amendments applies to this case. *See Fredricksen* v. *United Parcel Serv., Co.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009).

*facie* case of discrimination under the Rehabilitation Act, Lilly must show that (1) she is disabled

within the meaning of the statute, (2) she is otherwise qualified to perform her job, (3) she was

involved in programs receiving federal financial assistance, and (4) she was excluded from

participation, denied benefits, or otherwise discriminated against solely because of her disability.

*Branham*, 392 F.3d at 902 (citing *Silk* v. *City of Chicago*, 194 F.3d 788, 798 n.6 (7th Cir. 1999)).

Potter submits that Lilly has failed to show both that she is disabled under the

Rehabilitation Act and that she was denied a reasonable accommodation.  Under the

Rehabilitation Act, a person is disabled if she has (a) a physical or mental impairment that

substantially limits one or more of the major life activities of an individual; (b) a record of such

impairment; or (c) being regarded as having such an impairment. *Id.* (citing 29 U.S.C. §

705(20)(B)). The parties confine their analysis to the first method of establishing disability,

having a physical or mental impairment, and the court will do likewise.

Potter does not dispute that Lilly has an impairment; rather, he argues that Lilly's

impairment does not substantially limit her in a major life activity.  Lilly asserts that her back

injury substantially limits her in the major life activities of walking, caring for herself, and

working.  To be substantially limiting, an impairment must "prevent[] or severely restrict[] the

individual" in the major life activity.  *Toyota Motor Mfg., Ky., Inc.* v. *Williams*, 534 U.S. 184,

198, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002); *Burks* v. *Wis. Dep't of Transp.*, 464 F.3d 744, 756

(7th Cir. 2006).  In determining whether an individual is substantially limited in a major life

activity, courts consider the "nature and severity" of the impairment, the impairment's "duration

or expected duration," and the "permanent or long term impact."  29 C.F.R. 1630.2(j)(2)(i-iii);

*Kampmier* v. *Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007).  "Intermittent, episodic

impairments are not disabilities, the standard example being a broken leg." *Vande Zande* v.

*State of Wis. Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995). The court must also consider

corrective and mitigating measures that Lilly uses. "If the plaintiff can perform the major life

activity in a condition, manner or duration relatively equal to that of an average person while

using the corrective measures, she is not substantially limited and thus not disabled." *Storch* v.

*W. Town Refrigeration Corp.*, No. 04C3656, 2006 WL 2176025, at *6 (N.D. Ill. July 31, 2006)

(citing *Sutton* v. *United Air Lines, Inc.*, 527 U.S. 471, 482, 119 S. Ct. 2139, 144 L. Ed. 2d 450

(1999) and *Lawson* v. *CSX Transp., Inc.*, 245 F.3d 916, 924 (7th Cir. 2001)).

Lilly has failed to show that the limitations from her impairment are permanent or long

term. After her December 2006 injury, Lilly's orthopedist, Dr. Mercier, cleared her to return to

work without restrictions on January 2, 2007. Despite claiming that Dr. Mercier instructed her to

limit stairs and lifting, Lilly has provided no evidence of this beyond her own self-serving

testimony. *Fredericksen* v. *United Parcel Serv., Co.*, 581 F.3d 516 (7th Cir. 2009) (plaintiff that

"did not present any medical evidence to corroborate his self-assessment of being substantially

limited" did not create a genuine issue of fact to survive summary judgment) In contrast, Dr.

Mercier's clearance form shows that he did not place any limitations on Lilly's return to work.

Ex. 4 to Def.'s Mot. for Summ. J.; Ex. 10 to Def.'s Mot. for Summ. J. at 50. Moreover, while

Lilly asserts that she needed to work certain, easier routes because of her back, she admits that

she was sometimes assigned to routes more difficult for her, and yet, the only evidence of

difficulty is Lilly's use of overtime. But even the evidence of overtime use is vague: Lilly did

not testify how often she needed to use overtime or how much overtime she needed to complete

these routes. It is clear from Cole's rescinded suspension for unauthorized use of overtime on

16

May 21, 2007 that Lilly used overtime, at least once, to complete a route. Lilly has presented no evidence beyond this that she could not complete these assignments.

Lilly continued to work from January 2, 2007 to June 30, 2007, when she reinjured her back. Afterwards, Dr. Engelkemeir cleared Lilly to return to work with restrictions on August 13, 2007. Although Lilly did not immediately return to work, she does not contest that she was medically able to do so. Lilly also admits that, after November 2007, she worked for nine months without medical restrictions. These facts show that Lilly's limitations were intermittent and episodic. As such, Lilly is not substantially limited in a major life activity and, therefore, not disabled.

Even if Lilly has permanent or long term limitations, the evidence shows that Lilly's condition is mitigated, if not corrected, by treatment. After both of her injuries, Lilly was prescribed physical therapy sessions with Carrie Steffes. Steffes testified that Lilly's body function and motion improved over the course of treatment. Steffes Dep. 12:11-17, 38-45, Oct. 7, 2009, attached as Ex. 12 to Def.'s Mot. for Summ. J. In addition, following her June 2007 injury, Lilly received spinal injections, which Lilly concedes relieved her pain for as long as four weeks. The only limitation on these injections is the number prescribed by a doctor. Thus, with physical therapy and spinal injections, Lilly was not substantially limited in her ability to walk, work, or care for herself. Lilly is not, therefore, disabled under the Rehabilitation Act.

Because Lilly has not shown she is disabled, the court need not address whether she is otherwise qualified or whether the Postal Service failed to accommodate her. *See Fischer* v.

17

*Ameritech*, No. 98C7470, 2002 WL 1949726, at *4 (N.D. Ill. Aug. 23, 2002).  The court will

grant summary judgment to Potter on Lilly's claim under the Rehabilitation Act.

**III.    FMLA Interference**

Lilly's FMLA interference claim will survive summary judgment.  While Potter sought

summary judgment on all counts, he failed to address the interference claim in his brief.  The

court will not construct legal arguments for a party.  *United States* v. *Hook*, 195 F.3d 299, 310

(7th Cir. 1999).  Because Potter argued for summary judgment on Lilly's interference claim only

in his reply brief, this argument is waived.  *Carter* v. *Tennant Co.*, 383 F.3d 673, 678 (7th Cir.

2004).  Hence, the court will deny summary judgment on Lilly's FMLA interference claim.

## CONCLUSION AND ORDER

For the foregoing reasons, Potter's motion for summary judgment [# 49] is granted with

respect to Lilly's retaliation and disability discrimination claims and denied with respect to her

FMLA interference claims.  This case will be called for a status hearing on December 14, 2010

at 8:30 a.m.  The parties are instructed to engage in a sincere effort to resolve this litigation and

to report on these efforts at the status hearing.


Dated: November 18, 2010              Enter:  _____

                                              JOAN HUMPHREY LEFKOW
                                              United States District Judge